1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHN BURNIGHT,

11          Petitioner,                    No. CIV S-06-2398 MCE CHS P

12      vs.

13   THOMAS CAREY, Warden, et al.,

14          Respondents.            FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.    INTRODUCTION

17          Petitioner John Burnight is a state prisoner proceeding pro se with a petition for a

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Burnight challenges the September 15,

19   2004, decision by the Board of Prison Terms (hereinafter Board) finding him unsuitable for

20   parole.

21          In the July 28, 2009, Case Reassignment Order, the District Judge assigned to this

22   matter indicated that it may be prudent to await the Ninth Circuit's decision in Hayward v.

23   Marshall, 512 F.3d 536 (9th Cir. 2008), reh'g en banc granted, 527 F.3d 797 (9th Cir. May 16,

24   2008).  This matter therefore may eventually be stayed pending that decision.

25   /////

26   /////

1

II.    CLAIMS

Burnight's habeas petition raises three claims as follow, verbatim:

A.    Petitioner is entitled to release on parole because the Board of Parole Hearings decision to deny parole was not supported by any relevant, reliable evidence in the record in violation of petitioner's right to due process of law under the Fifth and Fourteenth Amendments and the California Constitution;

B.    Petitioner is entitled to release on parole because the Board of Parole Hearings failed to afford him an individualized consideration of all factors relevant to parole decisions in violation of petitioner's right to due process of law under the Fifth and Fourteenth Amendments and the California Constitution; and

C.    Petitioner is entitled to release on parole because the Board of Prison Hearings decision at the September 15, 2004 hearing was invalid because petitioner's term of imprisonment expired on June 14, 2004 when his presumptive release date passed without a subsequent parole consideration hearing being conducted.

/////

Upon careful consideration of the record and the applicable law, the undersigned will recommend that this petition for habeas corpus relief be denied.

III.   FACTUAL AND PROCEDURAL BACKGROUND

A.    Facts

The Board recited the facts of Burnight's commitment offense as follows:

PRESIDING COMMISSIONER RISEN: Okay. I'll go to the Probation Officer's report. It looks like it's about page three. Early on the morning of June 30th, 1989, the defendant or prisoner went to the home of his friend, the victim, Steve and I'll spell the last name, Z-E-E-H-A-N-D-E-L-A-A-R. How do you pronounce that?

MS. CAMERON: Zeehandelaar.

PRESIDING COMMISSIONER RISEN: Zeehandelaar, thank you.

"The prisoner had with him a shotgun belonging to his grandfather. About a month before the incident, the prisoner had sawed off the barrel of the shotgun. According to information from the prisoner's girlfriend, the prisoner's grandmother - -"

Wait.

"According to information from the defendant's girlfriend

and defendant's grandmother, the prisoner had gone to the victim's home to confront the victim with misinformation that the victim had presented to the girlfriend.  The victim lived about one and a half blocks away from the prisoner, who walked to the home.  The prisoner put the gun in some bushes in front of the house and then went to the front door, where the victim answered the door and the prisoner spoke with him.  The victim - - the defendant and the victim argued.  The defendant then backed - - then went back to the house and picked up the double-barreled shotgun and returned to the front door.  He shot one round directly into the victim's throat.  The shotgun was apparently touching the victim's neck at the time it was fired.  The victim's brother approached the front door and saw the defendant standing over the victim's body.  The defendant ran to his girlfriend's house, told her what he had done, drove to Santa Rita, crashing into a post out - - just outside the office and told the deputies that he had just shot somebody.  The victim was pronounced dead upon arrival at Eden, E-D-E-N, Hospital."

/////

Answer, Exhibit 2 at 12-14.

On January 13, 1993, Burnight pled guilty to second degree murder and on March 22, 1993, was sentenced to a term of 15 years to life.  Answer, Ex. 1 at 2.  On September 15, 2004, the Board held Burnight's Subsequent Parole Consideration Hearing.  Answer, Ex. 2 at 2.  At the conclusion of that hearing the Board found him unsuitable for parole.  Id. at 63-68.

B.      State Habeas Review

On December 17, 2004, Burnight filed a petition for writ of habeas corpus in the Alameda County Superior Court.  That petition was denied in a short but reasoned opinion on January 12, 2005.  Answer, Ex. 3 at 2.  Burnight then filed a petition in the California Court of Appeal for the First Appellate District, which was summarily denied on March 1, 2005.  Answer, Ex. 4 at 2.  Burnight then filed a petition in the California Supreme Court.  That petition was summarily denied on January 25, 2006, with citations to People v. Duvall, 9 Cal. 4th 464 (1995), In re Miller, 17 Cal. 2d 734 (1941) and In re Rosenkranz, 29 Cal. 4th 616 (2002).  Answer, Ex. 5 at 2.  Finally, Burnight filed this federal petition on October 31, 2006.

/////

IV.     APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under

4

1   section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223

2   F.3d 976, 982 (9th Cir. 2000).

3   /////

4   V.      DISCUSSION OF PETITIONER'S CLAIMS

5          A.      Decision Was Not Supported By Evidence

6                  1)      Description Of Claim

7                  Burnight argues that because the circumstances of his commitment offense were

8   not relevant reliable evidence that he was then currently an unreasonable risk of danger to

9   society, the Board's decision was not supported by some evidence and violated his liberty

10  interest in parole.  Petition at 18-25.

11                 2)      State Court Opinion

12                 The Alameda County Superior Court rejected this claim finding that, "there was

13  certainly some evidence, including, but not limited to the committing offense, and Petitioner's

14  lack of suitable parole plans."  Answer, Ex. 4 at 2.

15                 3)      Applicable Law And Discussion

16                 The Due Process Clause of the Fourteenth Amendment prohibits state action that

17  deprives a person of life, liberty, or property without due process of law.  A person alleging due

18  process violations must first demonstrate that he or she was deprived of a liberty or property

19  interest protected by the Due Process Clause and then show that the procedures attendant upon

20  the deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v.

21  Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir.

22  2002).

23                 A protected liberty interest may arise from either the Due Process Clause of the

24  United States Constitution or state laws.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

25  The United States Constitution does not, of its own force, create a protected liberty interest in a

26  parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).

1   However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that

2   parole release will be granted' when or unless certain designated findings are made, and thereby

3   gives rise to a constitutional liberty interest." McQuillion, 306 F.3d at 901 (quoting Greenholtz

4   v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  In this regard, it is clearly established that

5   California's parole scheme provides prisoners sentenced in California to a state prison term that

6   provides for the possibility of parole with "a constitutionally protected liberty interest in the

7   receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of

8   the Due Process Clause." Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing Sass v.

9   Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910,

10  914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; and Allen, 482 U.S. at 377-78 (quoting

11  Greenholtz, 442 U.S. at 12)).  Accordingly, this court must examine whether the deprivation of

12  petitioner's liberty interest in this case violated due process.

13          It has been clearly established by the United States Supreme Court "that a parole

14  board's decision deprives a prisoner of due process with respect to this interest if the board's

15  decision is not supported by 'some evidence in the record,' Sass, 461 F.3d at 1128-29 (citing

16  Superintendent v. Hill, 472 U.S. 445, 457 (1985)); see also Biggs, 334 F.3d at 915 (citing

17  McQuillion, 306 F.3d at 904), or is "otherwise arbitrary," Hill, 472 U.S. at 457.

18          "The 'some evidence' standard is minimally stringent," and a decision will be

19  upheld if there is any evidence in the record that could support the conclusion reached by the

20  fact-finder.  Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Cato v. Rushen, 824 F.2d

21  703, 705 (9th Cir. 1987)); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).

22  However, "the evidence underlying the [ ] decision must have some indicia of reliability."

23  Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  See also Perveler v.

24  Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992).  Determining whether the "some evidence"

25  standard is satisfied does not require examination of the entire record, independent assessment of

26  the credibility of witnesses, or the weighing of evidence.  Toussaint, 801 F.2d at 1105.  The

1   question is whether there is any reliable evidence in the record that could support the conclusion

2   reached.  Id.

3              In finding Burnight unsuitable for parole, the Board relied upon: a) the

4   circumstances of the commitment offense and b) Burnight's lack of adequate parole plans.

5                        a.      Circumstances Of The Commitment Offense

6              The circumstances of the commitment offense are one of fifteen factors relating to

7   an inmate's unsuitability or suitability for parole under California law.  Cal. Code Regs., tit. 15 §

8   2402(c)(1)-(d).  When denial is based on these circumstances the California courts have stated

9   that:

> A prisoner's commitment offense may constitute a circumstance
> tending to show that a prisoner is presently too dangerous to be
> found suitable for parole, but the denial of parole may be
> predicated on a prisoner's commitment offense only where the
> Board can "point to factors beyond the minimum elements of the
> crime for which the inmate was committed" that demonstrate the
> inmate will, at the time of the suitability hearing, present a danger
> to society if released.  [In re] Dannenberg, 34 Cal.4th [1061] at
> 1071, 23 Cal.Rptr.3d 417, 104 P.3d 783 (Cal.2005).  Factors
> beyond the minimum elements of the crime include, inter alia, that
> "[t]he offense was carried out in a dispassionate and calculated
> manner," that "[t]he offense was carried out in a manner which
> demonstrates an exceptionally callous disregard for human
> suffering," and that "[t]he motive for the crime is inexplicable or
> very trivial in relation to the offense." Cal.Code Regs., tit. 15
> § 2402(c)(1)(B), (D)-(E)."

/////

19   Irons, 505 F.3d at 852-53; see also In re Weider, 145 Cal. App.4th 570, 588 (2006) (to support

20   denial of parole, the "factors beyond the minimum elements of the crime" "must  be predicated

21   on "some evidence that the particular circumstances of [the prisoner's] crime-circumstances

22   beyond the minimum elements of his conviction-indicated exceptional callousness and cruelty

23   with trivial provocation, and thus suggested he remains a danger to public safety.")

24              Such circumstances may include "rehearsing the murder, executing of a sleeping

25   victim, stalking," id., or evidence that the defendant "acted with cold, calculated, dispassion, or

26   that he tormented, terrorized or injured [the victim] before deciding to shoot her; or that he

7

1  gratuitously increased or unnecessarily prolonged her pain and suffering."  In re Smith, 114 Cal.

2  App.4th at 367.

3         With respect to triviality, all murder is trivial to some degree.  Therefore for

4  purposes of comparison and to fit the statutory definition the motive must be materially less

5  significant (or more "trivial") than those which typically drive people to commit murder and

6  therefore is more indicative of a risk of danger to society if the prisoner is released than is

7  ordinarily presented.  In re Scott, 119 Cal. App.4th 871, 891 (2004).

8         The ultimate inquiry however "is not merely whether an inmate's crime was

9  especially callous, or shockingly vicious or lethal, but whether the identified facts are probative

10  to the central issue of current dangerousness when considered in light of the full record before

11  the Board or the Governor."  In re Lawrence, 44 Cal.4th 1181, 1221 (Cal. 2008); In re

12  Dannenberg, 34 Cal.4th 1061, 1070-71 (Cal. 2005).

13         With respect to the circumstances of the commitment offense, the Board stated:

14     The offense was carried out in an especially cruel and callous
       manner.  These conclusions are drawn from the statement of facts,
15     wherein the prisoner was angry with the victim because the victim
       had allegedly given some misinformation to the prisoner's
16     girlfriend.  The prisoner, late at night, obtained a shotgun from the
       trunk of his car.  He had previously sawed the barrel off.  He
17     walked over to the victim's house that was approximately a block
       and a half away.  He hid the shotgun in the bushes.  He then made
18     contact with the victim at the front door.  The prisoner and the
       victim had an argument over the alleged misinformation.  The
19     prisoner then stepped back from the porch, went over to where the
       shotgun was, took it out it was a double-barreled shotgun, and
20     walked up to the prisoner [sic] and placed it on his chest.  A few
       moments later, the gun was raised up to the victim's throat and two
21     - - a shot was fired, killing the victim instantly.  The prisoner then
       fled the scene and went to a sheriff's department or the police
22     department, where he gave himself up later that day.

23  Answer, Ex. 2 at 63-64.

24         Thus, because of "misinformation" Burnight obtained a shotgun, which he had

25  previously sawed-off, and in the dead of night walked to the home of his friend.  Burnight then

26  concealed the shotgun and confronted his friend.  At some point Burnight retrieved the shotgun,

placed the barrel against his friend's throat, and shot him.

Arriving at the home of one's friend in the middle of the night and concealing a weapon which you later use to shoot that friend in the throat could be properly characterized as acting "with cold, calculated, dispassion."  Further, the motive for the murder, a dispute over "misinformation," could properly be characterized as a trivial motive for murder.  More importantly, the identified facts of Burnight's commitment offense were probative to the central issue of his then current dangerousness when considered in light of the full record before the Board.  That record included Burnight's lack of appropriate parole plans.  Burnight however objects to the Board's use of the circumstances of his commitment offense, arguing that "reliance on these unchanging factors violates due process and runs contrary to the public interest purposes of rehabilitation and deterrence."  Petition at 25 (quoting Biggs, 334 F.3d at 916-17).

While it is true that the continued reliance over time on unchanging factors such as the circumstances of the commitment offense may result in a due process violation, a parole denial based solely on unchanging factors can initially satisfy due process requirements.  Biggs, 334 F.3d at 916.  In Irons, the Ninth Circuit explained that Biggs represents the law of the circuit that continued reliance on a prisoner's commitment offense or conduct prior to imprisonment could result in a due process violation over time.  Irons, 505 F.3d at 853.  Nevertheless, the court held that, given the egregiousness of the commitment offense, due process was not violated when the Board deemed a prisoner unsuitable for parole prior to expiration of his minimum term.  Id. at 846.

Burnight pled guilty on January 13, 1993, and was sentenced to a term of 15 years to life on March 22, 1993.  Thus at the time of his September 15, 2004 hearing Burnight had only served eleven years of his 15 year minimum term.[1]  Furthermore, his commitment offense

---

[1] Burnight's "minimum term" is not to be confused with his "minimum eligible parole date."  A minimum term is the minimum number of years imposed by a prisoner's sentence, in this case 15 years.  A "Minimum Eligible Parole Date," or "MEPD," is the "earliest date on which an Indeterminate Sentence Law or life prisoner may be legally released on parole"

1  could properly be characterized as being "egregious" as Burnight shot his friend in the neck over

2  an extremely trivial dispute.  The Board therefore would not have violated due process if it had

3  deemed Burnight unsuitable for parole based solely on the circumstances of his commitment

4  offense.  The Board however also took issue with Burnight's parole plans.

5                    b.   Parole Plans

6              Upon his release, Burnight planned to live with his mother in Hayward,

7  California.  Answer, Ex. 2 at 36.  At the 2004 hearing the victim's sister argued against

8  Burnight's parole and requested that if the Board were to grant Burnight parole that he not be

9  allowed to live in the city of Hayward because the victim's entire family still lived in that city.

10  Id. at 59.  The victim's sister noted that her family previously had "run-ins" with Burnight's

11  family since the time of the commitment offense.  Id.

12             The Board found Burnight's parole plans insufficient because Burnight would

13  have been living in close proximity to the victim's family.  Id. at 64.  The Board stated:

14             His parole plans, the prisoner has parole plans to parole to
               Hayward.  I believe that's in the county where the crime occurred
15             and the victim's next of kin apparently still live in that area and
               they are afraid today, I guess, and opposed to him being released to
16             that area.  And I believe the parole rules are that he cannot be
               within at least 35 miles of the family of the victim, so he's going to
17             have to come up with some other parole plans for a residence.

18   Id. at 65.  After the Board rendered its decision, Burnight noted that at his previous hearing he

19  had been informed that if paroled he must reside in Alameda County, which includes the city of

20  Hayward.  Id. at 67.  The Board acknowledged that there was a recent change to the law that

21  allowed the Board to parole Burnight to any county in California.  Id.   Given the new flexibility,

22  Presiding Commissioner Risen did not think it was "a reasonable idea" to parole Burnight to the

23  county where the victim's family still lived.  Id. at 68.

24  /////

25  

26  pursuant to California regulations.  See Cal. Code Regs., titl. 15, § 3000; see also Cal. Code
    Regs., tit. 15, § 2000(b)(67).  As of the 2004 hearing, Burnight's MEPD was April 23, 1999.

Under California law, the Board is authorized to consider "any other information which bears on the prisoner's suitability for release."  Cal. Code Regs., tit. 15, § 2402(b).  While it appears the lack of adequate parole plans was not because of Burnight's failure, but instead a change in the law, the Board nevertheless was within it's right to consider this factor, particularly given the nature of Burnight's crime.  Had this been the sole factor relied upon by the Board, it would likely be insufficient to justify a denial.  But that was not the case.

4)    Conclusion

The facts of Burnight's commitment offense were probative to his current dangerousness when considered in light of the full record before the Board.  Burnight murdered his friend in a gruesome manner for an inexplicable reason.  While that may one day be insufficient to find him unsuitable for parole, it was sufficient at the time of his 2004 hearing as Burnight had not yet served his minimum term.  Moreover, Burnight's parole plans included returning to the city of his commitment offense, where the victim's family still resided, and which the Board found to be unreasonable.

Based on this record there was evidence to support the Board's conclusion that at the time of the hearing Burnight was unsuitable for parole.  The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established constitutional law and Burnight is not entitled to relief on this claim.

B.    Individualized Consideration

1)    Description Of Claim

Burnight argues that the Board's decision violated his right to due process because the Board failed to given him an individualized consideration of all factors relevant to parole decisions.  Petition at 29.  Burnight also argues that the Board failed to consider special conditions of parole under which Burnight could have been safely paroled and failed to consider his minimum term in relation to the Board's "matrix of base terms."  Id. at 29-37.

/////

2)      Applicable Law And Discussion

With respect to Burnight's claim that he was not afforded an individualized consideration by the Board, the entirety of this claim consists of one paragraph of boilerplate law without any factual allegations or argument.  It would be a strain to characterize this paragraph as even conclusory allegations, however, even conclusory allegations, without more, cannot provide a basis for habeas relief.  See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995) (stating that conclusory allegations are not sufficient to support habeas relief).

Burnight however does allege the Board failed to consider specific factors of suitability in later portions of his petition, specifically his lack of a juvenile record, his age, and his exemplary behavior while incarcerated.  Petition at 34-35.  Assuming Burnight intended this argument to buttress his claim that he was not given an individualized consideration, the record belies this claim.

The record shows that Burnight's hearing consisted of a lengthy individualized examination of the relevant factors of parole suitability and unsuitability as they applied to him.  See Answer, Ex. 2 at 2-68.  While the Board may not have mentioned every factor, or Burnight may not agree with the Board's conclusions, there is no evidence the Board did not afford him an "individualized consideration" of all relevant factors.

With respect to Burnight's claim that the Board failed to consider special conditions of parole, Burnight argues that the Board's decision violated his right to due process because the Board "failed to fulfill its legislative mandate under the parole statutes and its own regulations by denying his release on parole without considering a legitimate alternative[] to ensure 'the prisoner may safely be released to the community.' "  Petition at 33 (quoting Cal. Code Regs., tit. 15, § 2402(b)).  Therefore, Burnight argues, the Board's determination that he was unsuitable for parole was "arbitrary and capricious."  Id.

Section 2402 of the California Code of Regulations provides that:

(a) General.  *The panel shall first determine whether the life*

12

*prisoner is suitable for release on parole*.  Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

(b) Information Considered.  *All relevant, reliable information available to the panel shall be considered* in determining suitability for parole.  Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, *including the use of special conditions* under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.  Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs., tit. 15, § 2402(a)-(b) (emphasis added).  Thus, while it is true that the Board must consider special conditions of release, when the subsections are read together and in their entirety, it is clear that "special conditions" are merely one type of "relevant, reliable information" that the Board may consider in determining whether Burnight was "suitable for release on parole."

Here the Board thoroughly examined "all relevant, reliable information" and determined that Burnight's release on parole would pose an unreasonable risk of danger to society.  Burnight has failed to show any violation of the applicable regulations, let alone his right to due process.

With respect to Burnight's argument that the Board failed to consider his minimum term in relation to the Board's matrix of base terms, while it is true that California regulations contain a matrix of suggested base terms that prisoners with indeterminate sentences should serve before they are released on parole, the matrix is not referenced until the prisoner has been found suitable for parole.  <u>See</u>  Cal. Code Regs., tit. 15, § 2403 (a)-(b).  The Board found Burnight unsuitable for parole and therefore was not required to reference the matrix.

/////

1    For all these reasons, Burnight has failed to present any evidence of a

2 constitutional violation and this claim should therefore be denied.

3    C.    Presumptive Release Date

4        1)    Description of Claim

5    Burnight argues that at his June 14, 2002, parole consideration hearing he was

6 denied parole for a period of two years.  Petition at 41.  He argues that this decision "created a

7 new presumptive release date . . . of June 14, 2004) and that when "this date passed without the

8 Board conducting a parole suitability hearing . . . his term of confinement was completed and

9 any action by the Board under Penal Code section 3041(b) was invalid."  Id. at 41-42.

10        2)    Applicable Law And Discussion

11    To the extent Burnight is alleging a state law violation, such a claim is not

12 cognizable in federal habeas.  A writ of habeas corpus is available under 28 U.S.C. § 2254(a)

13 only on the basis of some transgression of federal law binding on the state courts.  Middleton,

14 768 F.2d at 1085; Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is unavailable for

15 alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085; see

16 also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378,

17 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.  Milton, 407

18 U.S. at 377.

19    The Supreme Court has reiterated the standards of review for a federal habeas

20 court.  Estelle v. McGuire, 502 U.S. 62 (1991).  In Estelle, the Supreme Court reversed the

21 decision of the Court of Appeals for the Ninth Circuit, which had granted federal habeas relief.

22 The Court held that the Ninth Circuit erred in concluding that the evidence was incorrectly

23 admitted under state law since, "it is not the province of a federal habeas court to reexamine state

24 court determinations on state law questions."  Id. at 67-68.  The Court re-emphasized that

25 "federal habeas corpus relief does not lie for error in state law."  Id. at 67, citing Lewis v. Jeffers,

26 497 U.S. 764 (1990), and Pulley v. Harris, 465 U.S. 37, 41 (1984) (federal courts may not grant

14

1   habeas relief where the sole ground presented involves a perceived error of state law, unless said

2   error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses

3   of the Fourteenth Amendment).

4          To the extent Burnight is arguing the alleged delay violated constitutional law, in

5   order to establish a constitutional violation, Burnight must prove that any delay was both

6   unreasonable and prejudicial.  See United States v. Santana, 526 F.3d 1257, 1260 (9th Cir.

7   2008); Meador v. Knowles, 990 F.2d 503, 506 (9th Cir. 1993); Camacho v. White, 918 F.2d 74,

8   79 (9th Cir. 1990); Hopper v. United States Parole Comm'n, 702 F.2d 842, 845 (9th Cir. 1983);

9   Biggs v. California, 2006 WL 2621057, at *3-4 (E.D. Cal. Sept. 12, 2006); William v. Board of

10  Prison Terms, 2006 WL 463128, at *10 (E.D. Cal. Feb. 24, 2006), adopted, 2006 WL 845594

11  (E.D. Cal. Mar. 30, 2006).  Here there is no need to determine whether the alleged delay was

12  unreasonable, because Burnight has failed to allege any prejudice.

13         Moreover, even if Burnight had established a claim worthy of relief, and he has

14  not, his argument that the "only appropriate remedy" would be his "immediate release on parole"

15  is incorrect.  Petition at 42.  When habeas relief is warranted the district court has considerable

16  discretion in fashioning a remedy "tailored to the injury suffered from the constitutional

17  violation . . ." United States v. Morrison, 449 U.S. 361, 364 (1981).  The Supreme Court has

18  stated that "[f]ederal habeas corpus practice, as reflected by the decisions of this Court, indicates

19  that a court has broad discretion in conditioning a judgment granting habeas relief.  Federal

20  courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and

21  justice require.' " Hilton v. Braunskill, 481 U.S. 770, 775 (1987) (internal quotation marks

22  omitted).

23         Contrary to Burnight's argument, when a suitability hearing has been delayed the

24  "only remedy" required by law and justice would not be immediate release.  An order for an

25  immediate hearing would be a more appropriate remedy.  Burnight however has already received

26  the delayed hearing at issue.

1        For all these reasons, Burnight is not entitled to relief on this claim.

2   VI.    CONCLUSION

3        Accordingly, IT IS RECOMMENDED that petitioner's petition for a writ of

4   habeas corpus be denied.

5        These findings and recommendations are submitted to the United States District

6   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

7   days after being served with these findings and recommendations, any party may file written

8   objections with the court and serve a copy on all parties.  Such a document should be captioned

9   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10  shall be served and filed within ten days after service of the objections.  The parties are advised

11  that failure to file objections within the specified time may waive the right to appeal the District

12  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13

14  DATED: April 5, 2010                    _Charlene H. Sorrentino_

15                                          CHARLENE H. SORRENTINO
                                            UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25

26